UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | )  | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | 15-cr-10153-WGY |
| DAVID WRIGHT, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**RESPONSE OF TRUSTEES OF BOSTON UNIVERSITY
TO COURT ORDER CONCERNING IDENTITIES OF JURORS**

Absent extraordinary circumstances and particularized findings of a threat to the judicial process itself, the public and the press have a First Amendment right to know the identities of the jurors in a concluded criminal case. *U.S. v. Doherty,* 675 F. Supp. 719, 723 (D. Mass. 1987); *U.S. v. Hurley* (*In re Globe Newspaper Co.*), 920 F.2d 88, 97 (1st Cir. 1990). No findings of such a threat have been made in this case, yet the Court has denied WBUR[1] and other media organizations access to the identities of the jurors unless they agree to a "protective order" restraining what may be done with the information.

WBUR does not intend to publicize the jurors' identities in a manner that would cause reasonable concern for anyone's safety. However, neither WBUR nor any other media entity may be required to agree to a prior restraint on their speech as a condition of receiving court records to which they have a First Amendment right of access. Accordingly, WBUR renews its request for the juror names and addresses, and submits they should be provided without imposition of any protective order.

---

[1] Trustees of Boston University, through its public radio station, WBUR ("WBUR").

2817231.v1

WBUR filed its motion for access to the names and addresses of the jurors in this case for the sole purpose of contacting and interviewing them about their experience in this trial. (Doc. No. 359 at 2). It is not WBUR's practice to publish the names of all deliberating jurors in a concluded case. If a juror were to consent to an interview with WBUR but express a desire for anonymity, whether because of concern for personal safety or any other reason, WBUR would carefully consider such a request, as it would with any subject of an interview. Of course, potential interviewees are also free to decline WBUR's requests for comment, and WBUR personnel do not harass or harangue them if they decline an interview. WBUR respectfully suggests that on these issues, its reputation as a news organization speaks for itself.

The Court's October 20, 2017 Order denies general public access to the jurors' names and addresses, but does not make the necessary findings to support such a ruling. *U.S. v. Hurley* (*In re Globe Newspaper Co.*), 920 F.2d 88, 97 (1st Cir. 1990). The District of Massachusetts Jury Plan, construed in light of the First Amendment and common law rights of access to judicial records, permits "the withholding of juror identities only upon a finding of exceptional circumstances *peculiar to the case*," which may include "a credible threat of jury tampering, a risk of personal harm to individual jurors, and other evils affecting the administration of justice." *Id.* at 97 (emphasis supplied). The Court has not found any "risk of personal harm to individual jurors" in this case; indeed, it has acknowledged that "there is no credible threat against anyone involved in this prosecution." (Order at 2).

Instead, the Court has denied general access to the identities of the jurors because "this data may . . . be plastered permanently on the internet," giving "aid and comfort to ISIS propaganda." (Order at 2). However well-intentioned, this reasoning is a recipe for anonymous juries in every case relating to national security or terrorism, regardless of whether the particular

2

2817231.v1

facts of the case warrant it. While WBUR understands that under *Hurley*, "anonymity is acceptable in the exceptional case where there is a particular need for it," *Hurley* teaches that any "exceptional circumstances" found must be "peculiar to the case" at bar, and there is nothing specific about this case that warrants an exception to the rule of access. *Hurley*, 920 F.2d at 97.

Even if there were circumstances about this prosecution that could theoretically justify withholding the jurors' identities, those circumstances would have to be balanced against "the prospect of criminal justice being routinely meted out by unknown persons," a result that "does not comport with democratic values of accountability and openness." *Hurley*, 920 F.2d at 98. These "values of accountability and openness" are not set aside in terrorism cases—if anything, they take on heightened importance. *Cf. Detroit Free Press v. Ashcroft*, 303 F.3d 681, 711 (6th Cir. 2002) (holding unconstitutional the closure of "special interest" deportation cases, and noting that while "the events of September 11, 2001, left an indelible mark on our nation," the United States is "a country deeply committed to preserving the rights and freedoms guaranteed by our democracy," and "[o]pen proceedings, with a vigorous and scrutinizing press, serve to ensure the durability of our democracy."); *Am. Civil Liberties Union v. Dep't of Def.*, 389 F. Supp. 2d 547, 575 (S.D.N.Y. 2005) (rejecting argument that photos depicting torture of detainees should be withheld under FOIA because "terrorists will use the re-publication of the photographs as a pretext for further acts of terrorism": "Our nation does not surrender to blackmail, and fear of blackmail is not a legally sufficient argument to prevent us from performing a statutory command. Indeed, the freedoms that we champion are as important to our success in Iraq and Afghanistan as the guns and missiles with which our troops are armed."); "Reid: 'I am at war with your country,'" *cnn.com*, January 31, 2003 (partial transcript of plea hearing in *U.S. v. Reid*, 02-cr-10013-WGY) ("It is because we prize individual freedom so much that you are here in this

3

beautiful courtroom.  So that everyone can see, truly see that justice is administered fairly, individually, and discretely.")

Instead of making findings that overcome the First Amendment access rights of the press and the public, the Court has indicated that it may provide access to the information to media entities that agree to subject themselves to a "satisfactory protective order," punishable by the Court's contempt power, to "secure the jurors' personal identifiers from unnecessary dissemination on the internet."  (Doc. No. 357).  The Court's Order, however, does not explain the scope of the protective order it has in mind.  The Court does not state, for example, whether it expects media organizations to grant any interviewed jurors anonymity even if they don't request it; whether it expects the press to withhold the identities of jurors whose impartiality WBUR determines could be called into question; or whether the Court deems publication of a juror's identity over the radio or in print somehow preferable to "dissemination on the internet."[2]  (Doc. No. 357).  Absent any guidance on what kind of publication the Court deems "unnecessary," the invitation to media companies to propose protective orders could result in the Court's imposition of the most restrictive order suggested, even if it prevents the press from publishing newsworthy information.

Regardless, the "protective order" proposed in the Court's Order would clearly amount to a prior restraint on speech and publication, "the most serious and the least tolerable infringement on First Amendment rights."  *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976).  The Supreme Court has declared that elimination of prior restraints was the "'chief purpose'" of the First Amendment, *Gannett Co. v. DePasquale*, 443 U.S. 368, 393 n. 25 (1979), *quoting Near v.*

---

[2] *Doherty*, 675 F. Supp. at 725 ("[I]t is not for this Court to evaluate the "newsworthiness" of any information—that, after all, is the essence of censorship. . . .").

*State of Minnesota ex rel. Olson*, 283 U.S. 697, 713 (1931), and that they carry a "heavy presumption" against their constitutionality. *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963). Moreover, "[b]ecause a '"responsible press has always been regarded as the handmaiden of effective judicial administration, especially in the criminal field,"' the protection against prior restraint carries particular force in the reporting of criminal proceedings." *United States v. Quattrone*, 402 F.3d 304, 310 (2d Cir. 2005), *quoting Nebraska Press*, 427 U.S. at 559–60.[3]

The Court does not have the power to impose the kind of "protective order" it proposes in its Order, even to protect the anonymity of the jury during trial. *Quattrone*, 402 F.3d 304, 310 (2d Cir. 2005) (invalidating judicial order prohibiting media from publishing identities of jurors). Likewise, it cannot require the media to agree to such a restraint as a condition of receiving court records as to which there is a First Amendment right of access. *Doherty*, 675 F. Supp. at 723 ("[U]nder the First Amendment, the public has a general right, at some reasonable time after a verdict is delivered, to the names and addresses of the jurors discharging this important public trust."). It cannot, in other words, dictate that "one constitutional right should have to be surrendered in order to assert another." *Simmons v. United States*, 390 U.S. 377, 394 (1968); *cf. Blackburn v. Snow*, 771 F.2d 556, 568 (1st Cir. 1985) ("it has long been settled that government may not condition access to even a gratuitous benefit or privilege it bestows upon the sacrifice of a constitutional right.").

---

[3] In *Quattrone*, the Second Circuit invalidated a district court's order that "no member of the press or a media organization is to divulge at any time until further order of this Court the name of any prospective or selected juror." 402 F.3d at 307-308. The district court had intended the order to prevent a "repeat" of a mistrial declared in an earlier, unrelated case, which occurred after several publications "disclosed the name of a juror who, according to press reports, had signaled support for [the] defendant . . . through a hand gesture made in open court." *Id.* at 307. Notwithstanding the district court's understandable desire to protect the judicial process, the Court held the order violated the First Amendment because it was not supported by findings specific to the case that could justify the imposition of a prior restraint. *Id.* at 311, *quoting Nebraska Press,* 427 U.S. at 562–63.

Again, WBUR acknowledges the importance of both juror safety and of the jurors' perception that they will be protected from harm stemming from their jury service. *Hurley*, 920 F.2d at 91 ("Were jurors to feel that their personal safety was at risk, they might not only be reluctant to serve but might tailor verdicts so as to forestall harm to themselves, thus depriving the parties of an impartial jury.")  Nonetheless, the imposition of a judicial order restraining what the media may publish simply is not a constitutional way to resolve the issue. *Miami Herald Publishing Co. v. Tornillo*, 418 U.S. 241, 259 (1974) (White, J., concurring) ("Regardless of how beneficent-sounding the purposes of controlling the press might be, we . . . remain intensely skeptical about those measures that would allow government to insinuate itself into the editorial rooms of this Nation's press.")  In light of the absence of any specific "risk of personal harm to individual jurors" in this case, the Court should follow *Hurley* and release the names and addresses of the jurors to WBUR.  920 F.2d at 97.

        Respectfully Submitted,

        TRUSTEES OF BOSTON UNIVERSITY,

        By its attorney,

        /s/ *Jeffrey J. Pyle*
        Jeffrey J. Pyle (BBO #647438)
        PRINCE LOBEL TYE LLP
        One International Place, Suite 3700
        Boston, MA 02110
        (617) 456-8000
        (617) 456-8100 (fax)
        jpyle@princelobel.com

Dated: November 1, 2017

CERTIFICATE OF SERVICE

    I hereby certify that the within document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and by first-class mail to any non-registered participants.

                                                                   /s/ *Jeffrey J. Pyle*
                                                                   Jeffrey J. Pyle

2817231.v1